294 So.2d 298 (1974)
Henry W. ANDERSON, Plaintiff-Appellee,
v.
WELDING TESTING LABORATORY, INC., et al., Defendants-Appellants.
No. 9692.
Court of Appeal of Louisiana, First Circuit.
April 22, 1974.
Rehearing Denied May 28, 1974.
Writ Granted August 28, 1974.
*299 W. Luther Wilson, Baton Rouge, for defendants-appellants.
Mary Olive Pierson and Jerry J. McKernan, Baton Rouge, for plaintiff-appellee.
Before SARTAIN, BAILES and VERON, JJ.
SARTAIN, Judge.
Plaintiff, Henry W. Anderson, was injured on or about September 30, 1968 when his right hand was burned from contact with a radioactive material. Plaintiff, a welder by trade, was employed by Nichols Construction Company as a pipe foreman at the time of the accident. On that date Mr. Thomas Roach, an employee of defendant, Welding Testing Laboratory, Inc., left a live pill of iridium 192, a highly radioactive substance, at the Nichols plant after performing x-rays on pipe welds at the plant. Plaintiff found the live pill and thinking it to be some harmless object from defendant's camera equipment, picked it up, put it in his pocket and took it to his office where he placed it in a drawer to preserve it for later return to its owner. Several days later, plaintiff's right thumb and middle finger began to blister and show symptoms of radiation burn. The injuries to his right hand were diagnosed as radiation burns and comprise the personal injuries for which plaintiff filed this suit seeking recovery of damages.
Defendants admitted liability for plaintiff's injuries and the case was tried solely on the issue of quantum. The trial court awarded plaintiff $25,000.00 general damages. The Fireman's Fund Insurance Company was awarded $188.50 on its intervention for recovery of medical expenses paid to plaintiff as the workmen's compensation insurer of Nichols Construction Company. Defendants have appealed, seeking a reduction in the amount awarded in general damages. Thus, the sole issue presented to us for resolution is one of quantum.
The record reflects that plaintiff was first seen by Dr. A. F. Sanders on October 28, 1968. Dr. Sanders did not testify at trial but his medical report on plaintiff was filed in evidence. Dr. Sanders found an ulcer on the palmar surface of the distal phalanx of the right middle finger and nodule of the right thumb. Plaintiff was seen periodically by Dr. Sanders until March 10, 1969. On November 26, 1968, Dr. Sanders noted that the ulcer on the palmar surface of the distal phalanx of the right middle finger was healed. On March 10, 1969, plaintiff's last visit to Dr. Sanders, some swelling of the right middle finger and puffiness of the right thumb were noted. According to Dr. Sanders' report the plaintiff still complained of soreness *300 and numbness with tingling of the distal end of the right middle finger.
Plaintiff was then treated by Dr. Daniel Riordan, a noted New Orleans orthopedic surgeon specializing in injuries to the hand. Dr. Riordan's testimony was taken by deposition which was introduced by stipulation.
Dr. Riordan saw plaintiff on five occasions from April 8, 1969 up to December 5, 1972. Dr. Riordan's initial examination of plaintiff's hand on April 8, 1969 revealed that plaintiff's hand had a normal appearance. Dr. Riordan testified that plaintiff had full flexion and extension of all the fingers and there was no change in the temperature of the fingers. There was normal blanching and filling of the vessels on compression and release of all the fingers. There was some thickness of the skin and subcutaneous tissues at the tip of the long finger and thumb, indicating fibrosis. X-rays of the right hand revealed a normal bone anatomy. Dr. Riordan stated that his opinion at that time was that plaintiff had sustained a radiation burn on his right long finger and thumb, but no treatment was indicated except to watch and wait. Plaintiff was advised to use his hand normally but to avoid the extremes of heat and cold.
Dr. Riordan next saw plaintiff on July 10, 1969. At that time plaintiff complained of pain and cramps in his right hand. Dr. Riordan stated that the wrist flexion test was negative but that plaintiff did complain of pain on full extension of the fingers. Once again, there was no difference in temperature of the fingers. Dr. Riordan found no swelling of the tendon sheaths but the fingertips still felt a little firm.
Dr. Riordan saw plaintiff next on January 29, 1970 at which time plaintiff complained that he had extreme pain in his long finger during the cold weather. Dr. Riordan stated that there had been no increase in the fibrosis. Dr. Riordan felt that he still could not fully evaluate the effects of the radiation burn and plaintiff was told to return. Plaintiff returned to Dr. Riordan on September 28, 1971 at which time Dr. Riordan found the tips of the fingers to be dry, indicating the possibility of some fibrosis in the deeper tissues and sweat glands. The doctor stated that when plaintiff's fingers were pushed into the palm making a tight fist, his fingers touched the distal flexion crease and he could hold them there, showing that he had a full range of motion.
Plaintiff was last seen by Dr. Riordan on December 5, 1972. Dr. Riordan stated that there had been no increase in the fibrosis or scarring of the deep tissues. The tip of the long finger was hard. When plaintiff made a fist the tips of all fingers touched the palm but lacked a quarter of an inch of touching the distal flexion crease indicating a little loss of motion. Plaintiff complained of tingling of the hand and pain when the hand was exposed to cold.
Based upon these examinations Dr. Riordan testified that plaintiff's right hand would have a permanent intolerance to cold or heat. Dr. Riordan stated that plaintiff could possibly experience a progressive fibrosis or hardening of the tissues in his fingers. Dr. Riordan did not feel that plaintiff was capable of climbing as it would be dangerous to both him and his fellow workers. Dr. Riordan testified that plaintiff had a permanent partial loss of function of his right hand estimated at 50% because of the pain. Dr. Riordan could not predict the long term result of this radiation burn and stated that plaintiff could possibly develop ulcers of the fingers and hand as long as twenty to thirty years after the injury depending upon the amount of radiation exposure he sustained. Dr. Riordan felt that the possibility of plaintiff developing cancer from this radiation burn in the future was remote. Other than the fibrosis Dr. Riordan found no physiological changes in the hand and stated that plaintiff could still use the hand to perform normal body maintenance functions. Dr. *301 Riordan testified that plaintiff could use his hand as long as he avoids the extremes of heat and cold. Concerning the swelling of the hand which plaintiff exhibited at trial, Dr. Riordan felt that this was possibly caused from not using the hand regularly.
Plaintiff was also examined by Dr. William S. Maxfield, a radiologist, whose medical report dated May 12, 1972 was introduced into evidence in lieu of his testimony. Dr. Maxfield stated that when he examined Mr. Anderson the right hand was swollen to a significant degree. This was termed by Dr. Maxfield as an unusual response to radiation injury which normally results in tissue atrophy rather than hypertrophy. Dr. Maxfield also stated that the swelling could be the result of changes in the lymphatic system of the area due to the radiation exposure. It was Dr. Maxfield's opinion that further changes in plaintiff's condition might occur after additional years due to this radiation injury.
Plaintiff testified at trial that several days after he handled the iridium 192 capsule his hand, fingers and thumb blistered and turned red. Plaintiff stated that the blisters remained for almost a month before the hand healed and during that time he could not move his fingers. He stated that he can only grip with his last two fingers and continues to experience pain in his hand and fingers. Plaintiff's hand was swollen at trial and he exhibited his inability to close his hand completely into a fist. Plaintiff further testified that he has given up welding as a result of this injury because he can no longer rely on his right hand in climbing and he can no longer grip the welding rods with that hand. However, plaintiff stated that he has been working as a pipe fitter since the accident and thus has made no claim for lost wages. Plaintiff was fifty-seven years old at the time of the injury.
It is well settled that much discretion in the assessment of damages in cases of offenses and quasi offenses must be left to the judge or jury and that the amount of damages so assessed should not be disturbed unless the appellate court's examination of the facts reveals a clear abuse of that discretion. Lomenick v. Schoeffler, 250 La. 959, 200 So.2d 127 (1967).
Our review of the facts surrounding plaintiff's disability and the medical evidence in this record leads us to conclude that the quantum should be reduced. While radiation burns are rare and produce a great deal of anxiety because so little is known about their ultimate long-term effects, Dr. Riordan felt that the fibrosis in plaintiff's fingers is now static and that the possibilities of future problems are minimal. Concerning the possibility of cancer, Dr. Riordan stated that he did not discuss this with plaintiff because the possibility was too remote. As to the swelling in plaintiff's hand, Dr. Maxfield stated that this was a very unusual reaction in cases of this nature and Dr. Riordan felt that this condition was brought about by plaintiff's lack of use of his hand rather than by the radiation burn.
While plaintiff can no longer engage in welding as his trade, his 50% disability of his right hand has not hampered his normal manual functions according to Dr. Riordan. Plaintiff has made no claim for lost wages and has been gainfully employed as a pipe fitter since the accident. Plaintiff's hand is not permanently disfigured and the radiation burn was not so severe as to result in even the loss of hair on his hand. Even though plaintiff has visited several physicians a number of times since the accident, he has not been hospitalized nor has he been subjected to any surgical procedures due to his injury.
Further, plaintiff, though fifty-seven at the time of the injury, was sixty-two years of age at the time of the trial. As previously stated, he made no claim for loss of earnings during this five-year period, nor did he offer any evidence as to his possible loss of future earnings. As a matter of fact, plaintiff was the only person to testify. The remainder of the *302 record consists of the doctors' reports and depositions. Accordingly, his award here must be limited to pain and suffering. The residual disability has not affected his earning capacity.
We must therefore conclude that the award of $25,000.00 is excessive and the same should be reduced to $10,000.00.
Accordingly, for the above reasons, the judgment of the district court is amended to reduce the award for personal injuries, pain and suffering to $10,000.00. In all other respects the judgment is affirmed. The cost of this appeal is to be borne by the defendants-appellants.
Amended, and as amended affirmed.